**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JON ANDRESEN** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **COUNTY OF NORTHAMPTON, et al** | : | **NO. 11-7582** |

**<u>MEMORANDUM OPINION</u>**

**Savage, J.**                                                    **October 31, 2012**

     In this civil rights action brought under 42 U.S.C. § 1983, the plaintiff, Jon-Christopher Smith Andresen ("Andresen"), contends that he was incarcerated beyond his release date in violation of his Eighth Amendment right to be free from cruel and unusual punishment and his Fourteenth Amendment due process rights. He claims that the defendants refused to give him credit for his "street time," or time spent on parole, after he was recommitted to prison for violation of parole. He has named as defendants Robert Samberg, the Intake Supervisor/Lieutenant and subsequently the Intake Administrator at Northampton County Prison ("NCP"); Michael Bateman, the Classification Coordinator; Robert Meyers, the Director of Corrections; and Todd Buskirk, the Warden of NCP. He contends that Samberg was deliberately indifferent to his constitutional right to release once he had served his maximum sentence by failing to respond to inquiries and challenges to the miscalculation of the sentence. Andresen claims that the other defendants deprived him of a significant liberty interest by denying him a meaningful review of the calculation of his sentence, and by approving the practices and policies of NCP regarding the calculation of the inmates' sentences.[1]

---

[1] In the original complaint, Plaintiff asserted claims against Robin Stanley, Lieutenant for the Intake Division. He has withdrawn all claims against her. He has also withdrawn his claim for negligence.

All defendants have moved for summary judgment.   They argue that the sentence was not miscalculated; but, even if it had been, it does not rise to the level of a deprivation of a constitutional right.   They also assert qualified immunity.

We conclude that Andresen's sentence was not miscalculated and his release date was correctly fixed by the prison officials.   Consequently, because he was not detained beyond the expiration of his sentence, he suffered no deprivation of his constitutional rights.   Therefore, as a matter of law, the defendants are entitled to summary judgment in their favor.

### Factual Background[2]

On July 21, 2007, Andresen was committed to NCP after having been found guilty of criminal trespass.[3]   On October 16, 2007, Judge McFadden of the Court of Common Pleas of Northampton County imposed a county prison sentence of ninety days to twenty-three months, with credit for time served.[4]   On October 19, 2007, after serving his minimum term of imprisonment, Andresen was paroled.[5]

On May 13, 2008, Andresen was recommitted to NCP for violation of parole.[6]   On October 10, 2008, after a parole violation hearing, Judge McFadden sentenced

---

David Penchishen, the intake administrator who originally calculated Andresen's sentence, is not a defendant in this case.

[2] In light of the summary judgment standard, the facts are presented in the light most favorable to the plaintiff and all inferences are drawn in his favor.

[3] *Defs.' Stmt. of Undisputed Facts* ¶ 13, Doc. No. 12 ("*Defs.' SOF*").

[4] *Id.*, Ex. K.

[5] *Id.* ¶ 14.

[6] *Id.* ¶ 16.

Andresen to serve the balance of his sentence without any credit for street time.[7]   The sentence was essentially a "time served" or "time-in" sentence.   Andresen was released from NCP on the same day.

On April 18, 2009, Andresen was arrested in Lehigh County for theft by unlawful taking and receiving stolen property.[8]   On July 14, 2009, Andresen was recommitted to NCP on a parole detainer issued by the Northampton County court.[9]   On July 31, 2009, after finding that Andresen had again violated his parole, Judge McFadden sentenced him to serve the balance of his October 16 sentence, with "credit for time that's due to him."[10]   As noted in the General Remarks section of the Common Pleas docket, the sentence imposed was "Balance of Sentence, Credit TS, Eligible for Work Release."[11]

David Penchishen, the Intake Administrator at NCP responsible for calculating inmates' sentences at the time, reviewed the sentencing sheet and calculated Andresen's release date as October 13, 2010.[12]   Penchishen did not apply any credit for street time because he understood a defendant serving a county sentence,[13] that is, a

---

[7] *Id.*, Ex. O.  As of October 10, 2008, Andresen had served the minimum term of imprisonment (90 days) and 150 days since his May recommitment.  Thus, he had served 240 days, or 8 months, of his maximum of 23 months.

[8] *Id.* ¶ 17.

[9] *Id.* ¶ 18.

[10] *Id.* ¶ 19; *Hr'g Tr.* at 3, Jul. 31, 2009.

[11] *Id.* ¶ 19, Ex. S.

[12] *Id.* ¶ 22.

[13] Persons sentenced to a maximum term of less than two years are expressly excluded from the jurisdiction of the Pennsylvania State Board of Parole.  61 Pa. Cons. Stat. Ann. § 6132 (West 2012).  Consequently, Andresen was not under the jurisdiction of the Pennsylvania Board of Parole.  *See Torres v. Pa. Bd. of Prob. and Parole*, 861 A.2d 394. 404 (Pa. Commw. Ct. 2004)("A sentence that is less than twenty-four months is a county sentence, and individuals released on parole from county sentences are supervised by the county probation department rather than the state Board.").

sentence with a maximum term of less than two years, was not entitled to such a credit.[14]

Penchishen's calculation of the sentence, specifically, his decision not to credit Andresen's street time, is at the heart of this dispute.  Andresen was on parole after his release from prison on October 10, 2008 until his arrest on April 18, 2009.  Had he been credited with this time spent on the street, his sentence would have expired after serving nine months instead of the sixteen months he served.

In September 2009, when he perceived what he believed was an error in his release date calculation, Andresen requested a meeting with Mary Williams, a prison counselor.[15]  Williams informed Andresen that his release date was correct.[16]  Andresen then sent a request slip addressed to Bateman, Deputy Warden of Classification for NCP, regarding the calculation of his release.[17]  After receiving Andresen's slip, Bateman spoke to Andresen about his concerns and directed him to Samberg, who was then the Intake Administrator.[18]  Samberg reported to Bateman that he was reviewing Andresen's sentence calculation.[19]

In January 2010, Andresen met with Samberg and Robin Stanley to address his concerns.[20]  Samberg, concluding that Andresen's sentence was calculated correctly,

---

[14] *Penchishen Dep.* 18:5-18:7, Jun 25, 2012, Ex. G-1.

[15] *Pl.'s Mem. of Law in Support of His Opp. to Defs.' Mot. for Summ. J.* at 3, Doc. No. 14.

[16] *Id.*

[17] *Defs.' SOF* ¶ 26.

[18] *Id.* ¶ 27.

[19] *Id.* ¶ 28.

[20] *Pl.'s Resp. to Defs.' Stmt. of Undisputed Facts* ¶ 30; *Defs.' SOF* ¶¶ 30-31. The parties dispute what transpired before and at the meeting.  Even though Samberg does not recall a meeting with

did not give him credit for street time.[21]   As did Penchishen, Samberg believed that street time could not be credited to a county sentence.[22]

Samberg conferred with Robert Meyers, the Director of Corrections, about Andresen's sentence.[23]   Meyers also concluded that Andresen's sentence was calculated correctly.[24]

On May 12, 2010, Andresen filed a Motion for Credit for Time Served with the Northampton County Court of Common Pleas.[25]   On June 7, 2010, after a hearing, Judge McFadden granted the motion.   She ordered NCP to recalculate Andresen's sentence, giving him credit for the time he was on the street and for twenty-eight days spent in an inpatient facility.[26]   Four days later, Andresen was released, having served approximately ten months since the parole violation hearing.[27]   Andresen contends that he should have been released in December 2009.[28]

---

Andresen, *Samberg Dep.* 51:11-51:14, Jun. 25, 2012, Ex. F-1, the defendants contend that Samberg had Andresen's folder, went through the calculation, and concluded that the sentence was correct.   *Id.* Andresen recollects that the meeting lasted less than five minutes and that Samberg "didn't even look in his computer and had his answer written down on a little piece of paper."   *Pl.'s Resp. to Defs.' Stmt. of Undisputed Facts* ¶¶ 30-31.

[21] *Defs.' SOF* ¶ 37.

[22] *Samberg Dep.* 25:4-25:18, Ex. F-1.

[23] *Defs.' SOF* ¶ 34.

[24] *Id.*

[25] *Id.* ¶ 39, Ex. U.   Defendants' Statement of Undisputed Facts states that Andresen filed a "Motion for Credit for Time Served" on the basis that NCP should have removed his street time.   The plaintiff admits this statement of fact.   Considering that is exactly what NCP did in this case, we believe this was a typo and it should have said "on the basis that NCP should not have removed his street time" or "on the basis that NCP should have credited his street time."

[26] *Id.* ¶¶ 42-43, Ex. V.

[27] *Id.* ¶ 45.

[28] *Id.* ¶ 41.

**Summary Judgment**

Summary judgment is appropriate if the movant shows "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Judgment will be entered against a party who fails to sufficiently establish any element essential to that party's case and who bears the ultimate burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In examining the motion, we must draw all reasonable inferences in the nonmovant's favor. *InterVest, Inc. v. Bloomberg, L.P.*, 340 F.3d 144, 159-60 (3d Cir. 2003).

The initial burden of demonstrating there are no genuine issues of material fact falls on the moving party. Fed. R. Civ. P. 56(a). Once the moving party has met its burden, the nonmoving party must counter with "'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

**Discussion**

*Eighth Amendment Claim*

Andresen claims that Samberg violated his Eighth Amendment right by removing his credit for the street time he spent while on parole, resulting in his detention beyond the termination of his sentence. He also contends that Samberg took no meaningful steps to cure the error in the release date calculation.

At the center of the dispute is the calculation of the maximum release date. Andresen contends he should have been released in December 2009 or early January

2010 because he was entitled to credit for approximately five months he spent on the street on parole.  The defendants counter that before Judge McFadden's June 2010 order, there was no credit for street time.  Thus, Andresen's claim rests upon whether he was entitled to credit for good time spent on parole.

When she recommitted him on July 31, 2009, Judge McFadden did not mention, nor did she expressly order, that Andresen was to be given credit for street time.[29]  The parties interpret this silence differently.  The defendants contend that the judge's silence means no credit for street time was intended.  Andresen asserts that it meant that his street time was to be credited to him.  In other words, Andresen argues that unless the judge expressly orders otherwise, credit for street time is automatically applied.

The Parole Act, 61 Pa. Cons. Stat. Ann. § 6138 (West 2012), which the defendants relied upon in calculating the release date, does not apply to a county sentence, that is, a sentence that is less than two years.  The Act applies only to parolees under the jurisdiction of the Pennsylvania Board of Parole.  Because he was sentenced to a maximum term of imprisonment of less than two years, Andresen was under Judge McFadden's – not the Parole Board's – jurisdiction while on parole.  42 Pa. Const. Stat. Ann. § 9776 (West 2009).  Therefore, the bar against crediting a parolee "for the time at liberty on parole" under section 6138(a)(2) of the Parole Act did not preclude Judge McFadden from giving Andresen credit for time spent on parole.

---

[29] At the hearing, Judge McFadden ordered "credit for time that's due to [Andresen]."  *Hr'g Tr.* at 3, Jul. 31, 2009.  The sentencing sheet, filled out by the clerk, indicates that Andresen is to be given credit for time served.  *Defs.' SOF*, Ex. S.

The defendants' reliance on the Parole Act may have been misplaced. Nonetheless, the sentence calculation was correct. Andresen was not entitled to the credit he claims.

A defendant on parole on a county sentence found to have violated parole is "not entitled as of right to credit for time spent on parole without violation." *Commonwealth v. Fair*, 497 A.2d 643, 645 (Pa. Super. Ct. 1985). Stated differently, there is no legal requirement that a parolee under the jurisdiction of the Common Pleas Court be given credit for time he spent on the street while on parole when sentenced for violating his parole. Nor, contrary to the defendants' argument, is the court barred from giving such credit. It is within the court's discretion to give credit for street time. *Id.* (citing *Commonwealth v. Michenfelder*, 408 A.2d 860 (Pa. Super. Ct. 1979); *Commonwealth v. Broden*, 392 A.2d 858 (Pa. Super. Ct. 1978)). Accordingly, in the absence of an express order, there is no credit to be applied.

Andresen's contention that Judge McFadden's statement at the second parole violation hearing on July 31, 2009 that "credit for time that is due to him" and the remark on the sentencing sheet "Credit for TS" meant that he was entitled to credit for good time on the street is premised on a fundamental misunderstanding of the term "time served." The term refers to time served in custody. The statutory section governing computation of credit for time served specifically refers to "all time spent in custody." 42 Pa. Const. Stat. Ann. § 9760 (West 2012).

At the time of his sentencing on July 31, 2009, Andresen had served time in custody in neighboring Lehigh County on his new arrest and had been recommitted to Northampton County on a parole detainer after completing his Lehigh County sentence.

Consequently, he was entitled to credit for the time in custody on the detainer.  Judge McFadden ordered that he be given credit for that time as mandated by 42 Pa. Cons. Stat. Ann. § 9760.  She did not order that he be given additional credit for good time on the street.  Therefore, because there is no automatic credit for street time and none was ordered, Andresen's maximum release date as calculated by the prison officials was correct.

Even if Andresen had been detained beyond the maximum term of his sentence, his claim would still fail.  He has not produced probative evidence that would establish the *prima facie* elements of his Eighth Amendment claim against Samberg.

A prisoner's detention beyond his maximum term of imprisonment can constitute cruel and unusual punishment in violation of the Eighth Amendment.  *Sample v. Diecks,* 885 F.2d 1099, 1107-08 (3d Cir. 1989).  However, the detaining of a prisoner past the expiration of his sentence does not, by itself, amount to a constitutional violation.  To establish § 1983 liability against a prison official in such a case, the plaintiff must demonstrate three elements: (1) the prison official knew the prisoner had a problem and the risk that unwarranted punishment was being, or would be, inflicted; (2) the official either failed to act or took ineffectual action under the circumstances, indicating that his response to the problem was a product of deliberate indifference to the prisoner's plight; and (3) a causal connection between the official's response to the problem and the unjustified detention.  *Sample,* 885 F.2d at 1110.

Andresen must produce probative evidence to demonstrate that Samberg's actions amounted to deliberate indifference, not mere negligence.  In determining whether a prison official's failure to act is the product of deliberate indifference, "the

official's duties and the role he or she has played in the everyday life of the prison" must

be considered:

> Obviously, not every official who is aware of a problem exhibits indifference by
> failing to resolve it.  A warden, for example, although he may have ultimate
> responsibility for seeing that prisoners are released when their sentences are
> served, does not exhibit deliberate indifference by failing to address a sentence
> calculation problem brought to his attention when there are procedures in place
> calling for others to pursue the matter.  On the other hand, if a prison official
> knows that, given his or her job description or the role he or she has assumed
> in the administration of the prison, a sentence calculation problem will not likely
> be resolved unless he or she addresses it or refers it to others, it is far more
> likely that the requisite attitude will be present.

*Sample*, 885 F.2d at 1110.

There is an Eighth Amendment violation where the record demonstrates that the

prison official:

> (1) believed [the prisoner's] inquiry might well have merit, (2) knew that the
> matter needed to be clarified, (3) believed [the prisoner] had to rely on [his]
> efforts alone to rectify the problem, (4) did not follow the relevant procedures
> mandated by the Pennsylvania Bureau of Correction, (5) took no other remedial
> action, and (6) did not inform [the prisoner] of any other action he . . . might take
> to resolve his problem.

*Montanez v. Thompson*, 603 F.3d 243, 252 (3d Cir. 2010) (citing *Sample*, 885 F. 2d at

1111).

A plaintiff may recover under § 1983 on an Eighth Amendment claim only where

he establishes that a defendant acted "intentionally or with a state of mind described as

deliberate indifference to deprivation of the victim's constitutional rights."   *Moore v.*

*Tartler*, 986 F.2d 682, 686 (3d Cir. 1993) (citing *Wilson v. Seiter*, 501 U.S. 294 (1991));

*see also Haygood v. Younger*, 769 F.2d 1350 (9th Cir. 1985) (a violation of the Eighth

Amendment requires a finding of culpable mental state on the part of prison officials,

mere negligent conduct will not suffice).   The Third Circuit observed that deliberate

indifference was more typically shown "in those cases where prison officials were put on

10

notice and then simply refused to investigate a prisoner's claim of sentence miscalculation." *Id.* at 686.   *See Alexander v. Perrill*, 916 F.2d 1392, 1398 (9th Cir. 1990) (failure to investigate prisoner's claim of sentence miscalculation constitutes deliberate indifference on the part of prison officials); *Sample*, 885 F.2d at 1110 (same); *Haygoo*d, 769 F.2d at 1355 (same); *compare Lundblade v. Franzen*, 631 F.Supp. 214 (N.D. Ill. 1986) (where an investigation was conducted, an Eighth Amendment claim was not supported).   Because the prison officials who had denied Moore's initial requests for release conducted an investigation of his claim and eventually released him, there was no deliberate indifference.   *Moore*, 986 F.2d at 687.

Here, none of the defendants believed that Andresen's grievance had merit. They did not ignore his complaint.   On the contrary, upon receiving Andresen's complaint, they reviewed the court documents and concluded that his maximum release date had been calculated correctly by more than one prison official.   They determined there was no need for clarification.

The record demonstrates that Samberg, who had the authority and responsibility to review an inmate's record to determine whether the release date was calculated and recorded correctly, did not ignore Andresen's complaint or refuse to revisit the calculation.   He did not blindly accept his predecessor's calculation.   He met with Andresen after receiving Andresen's request slip.   Samberg contends that, prior to the meeting, he reviewed Andresen's folder, which included his intake file, documents regarding the case, commitment, recommitments, court actions, sentence sheets, court orders, and documents from Andresen and his attorney.[30]   Andresen contends that, in

---

[30] *Defs.' SOF* ¶¶ 31-32.

his presence, Samberg cursorily glanced at a small piece of paper without any further review or investigation.  But, he does not dispute that Samberg reviewed pertinent documents before the meeting and met with Meyers to discuss Andresen's sentence calculation.[31]   After Samberg explained the gist of Andresen's complaint and the rationale underlying his response to him, Meyers, who had a working knowledge of sentence calculations, concurred that Andresen's sentence was calculated correctly.[32]

Applying the *Sample* analysis and viewing the facts in the light most favorable to Andresen, there is no genuine issue of material fact as to whether Samberg acted with deliberate indifference to a risk of unjustified deprivation of Andresen's liberty.  Samberg did not believe Andresen's inquiry was meritorious.  He was convinced, whether erroneously or not, that in absence of a specific order, the Parole Act barred credit for street time.  To confirm his understanding, Samberg consulted with Meyers, the Director of Corrections of NCP and a former intake administrator, who reviewed the matter and arrived at the same conclusion.  Given these circumstances, Samberg did not believe that the matter needed clarification.

### Due Process Claim

Andresen contends that defendants Samberg, Buskirk, Bateman and Meyers deprived him of a significant liberty interest because they approved the policy, practice and custom at NCP, and deferred to the personnel of the Intake Division to calculate an inmate's maximum release date.[33]   Stated differently, his complaint is that the prison

---

[31] *Id.* ¶ 34.

[32] *Meyers Dep.* 6:19-7:2, Jun. 25, 2012, Ex. B.

[33] *Compl.* ¶ 27.

officials did not provide an adequate process for addressing inmate complaints about the calculation of their sentences; and as a result of the inadequate procedures, he was held past his release date.

Detention beyond one's term may give rise to a claim for deprivation of liberty without due process under the Fourteenth Amendment.  To establish § 1983 liability based on a violation of the Due Process Clause, the plaintiff must prove five elements:

> (1) that he was deprived of a protected liberty or property interest; (2) that this deprivation was without due process; (3) that the defendant subjected the plaintiff, or caused the plaintiff to be subjected to, this deprivation without due process; (4) that the defendant was acting under color of state law; and (5) that the plaintiff suffered injury as a result of the deprivation without due process.

*Sample*, 885 F.2d at 1114-15.

Because there was no detention beyond Andresen's maximum sentence term, there was no deprivation of a protected liberty interest.  There was no injury.  Hence, there was no due process violation.

Had Andresen been unlawfully detained, he still could not show that the defendants are liable under § 1983.  He cannot make out the elements necessary to establish liability.  Applying the balancing test set out in *Mathews v. Eldridge* to determine what process is due a prisoner facing detention beyond his term, the Third Circuit has held that "procedural due process requires that an inmate with a challenge to the calculation of his release date promptly be listened to by someone having authority to decide the challenge or pass it on for further review and decision."  *Sample*, 885 F. 2d at 1115 (citing *Mathews v. Eldridge*, 424 U.S. 319, 348 (1976)).

In this case, Andresen fails to point to evidence from which a factfinder would find that his claim was not meaningfully considered by the defendants.  On the contrary, the undisputed facts demonstrate that the prison officials considered Andresen's

complaint.  Upon receiving Andresen's complaint, Samberg reviewed the relevant court documents and had a meeting with Andresen.  At the time of the meeting with Andresen, Samberg had the authority to recalculate the sentence and to release Andresen if Penchishen's calculation was incorrect.  Samberg also discussed Andresen's complaint and sentence calculation with Meyers, who agreed that the sentence was correctly calculated.  Significantly, Andresen has not proffered evidence that would establish the inefficacy of the multi-level system established in the Inmate Handbook, including the multi-level review and appeal to the Deputy Warden.

Because Andresen has failed to produce probative evidence that would establish the *prima facie* elements of his due process claims, Samberg, Bateman, Buskirk and Meyers are entitled to summary judgment on Andresen's Due Process claim.

## Conclusion

Andresen's sentence was properly calculated and he did not serve prison time beyond the term of imprisonment imposed.  Because he was not unlawfully detained, there was no deprivation of a constitutional right.  Therefore, the defendants are entitled to summary judgment.